**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JAMES ROBINSON, III and CHRIS** | § | |
| **SCRUGGS, individually and on behalf of** | § | |
| **those similarly situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Civil Action No. 4:15-cv-158** |
| **v.** | § | **ECF** |
| | § | |
| **GENERAL MOTORS COMPANY** | § | |
| **and GENERAL MOTORS, LLC,** | § | |
| | § | |
| **Defendants.** | § | |

---

**PLAINTIFFS' MOTION FOR RULE 23(b)(2) or 23(b)(1) CLASS CERTIFICATION**
**AND BRIEF IN SUPPORT**

---

Robert J. Wiley
Texas Bar No. 24013750
rwiley@robwiley.com
*Board Certified Specialist, Texas Board of Legal*
*Specialization, Labor and Employment Law*
Eric P. Dama
Texas Bar No. 24090061
edama@robwiley.com

LAW OFFICE OF ROB WILEY, P.C.
1825 Market Center Blvd., Suite 385
Dallas, Texas 75207
Telephone:  (214) 528-6500
Facsimile:  (214) 528-6511

**ATTORNEYS FOR PLAINTIFFS**

# **TABLE OF CONTENTS**

Page

Table of Contents ........................................................................................ i-ii

Table of Authorities .................................................................................... iii

I.    Statement of Facts ............................................................................... 2

       A.    The Named Plaintiffs and putative class members hold a religious belief
             that they can neither work nor be paid on certain holy days................. 3

       B.    The Named Plaintiffs and putative class members have sought to take
             unpaid leave on holy days. General Motors is refusing to grant these
             requests.................................................................................... 5

       C.    Volunteer workers are available who could cover the Named Plaintiffs    7
             and putative class members' shifts…………………………………………

II.   Argument ............................................................................................ 7

       A.    The appropriate sections of Fed. R. Civ. P. 23 under which the suit is
             properly maintainable as a class action................................... 7

             1. Rule 23(b)(2)…………………………………………………………… 7

             2. Rule 23(b)(1)…………………………………………………………… 9

       B.    Specific factual allegations concerning the alleged class........................ 10

             1. The approximate number of class members…………………………… 10

             2. The definition of the class and any subclasses………………………… 10

             3. The distinguishing and common characteristics of class members,
             such as geography, time, and common financial incentives. …………… 11

             4. Questions of law and fact that are common to the class……………… 11

             5. Allegations concerning the findings required by Rule 23(b)(3)……… 12

       C.    The basis of the named plaintiffs' claim to be adequate representatives
             of the class, including financial responsibility to fund the action ............ 13

       D.    The basis for determining any required jurisdictional amount………….. 15

E.    The type and estimated expense of notice to be give to class members, and the source of funds from which notice costs will be paid. ............. 15

F.    Discovery and time necessary for such discovery........................... 16

G.    All arrangements for the payment of plaintiffs' attorney's fees............ 16

III.    Conclusion ...................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                  **PAGE**

*Byes v. Telecheck Recovery Serv. Inc.*,
173 F.R.D. 421 (E.D. La. 1997)...................................................................   13

*In re Community Bank of Northern Virginia*,
622 F.3d 275 (3d Cir. 2010)........................................................................   13

*Davis v. Fort Bend County,*
765 F.3d 480 (5th Cir. 2014) ......................................................................   13

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ...............................................................................   8


**STATUTES**

Fed. R. Civ. P. 23(b)(1)...............................................................................   1, 9-10,
                                                                                                      15

Fed. R. Civ. P. 23(b)(2)...............................................................................   1, 7-9,
                                                                                                      15

Fed. R. Civ. P. 23(b)(3)...............................................................................   12, 15

Fed. R. Civ. P. 26(f) ...................................................................................   2

42 U.S.C. § 2000e-2...................................................................................   7, 9, 12,
                                                                                                      15, 16

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JAMES ROBINSON, III and CHRIS** | § | |
| **SCRUGGS, individually and on behalf of** | § | |
| **those similarly situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Civil Action No. 4:15-cv-158** |
| **v.** | § | **ECF** |
| | § | |
| **GENERAL MOTORS COMPANY** | § | |
| **and GENERAL MOTORS, LLC,** | § | |
| | § | |
| **Defendants.** | § | |

---

**PLAINTIFFS' MOTION FOR RULE 23(b)(2) OR 23(b)(1) CLASS CERTIFICATION
AND BRIEF IN SUPPORT**

---

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

On March 4, 2015, James Robinson, III and Chris Scruggs sued General Motors Corporation and its U.S. subsidiary to vindicate the rights of people of faith who are denied unpaid leave for holy days when a volunteer is available to cover the shift. Pursuant to Rules 23(b)(2) and 23(b)(1) the Named Plaintiffs now move for class certification.

Many religions share a belief that adherents must respect certain holy days by neither (1) working nor (2) being paid. However, General Motors denies its employees the right to take unpaid time off for holy days regardless of the availability of a volunteer worker. Plaintiffs move to certify a class of all General Motors workers within the United States subject to the 2011 UAW-GM National Agreement and who may seek unpaid leave for a holy day because of a religious belief.

As is true of most civil rights class actions, the only class relief sought is injunctive relief. Specifically, Plaintiffs seek an injunction requiring General Motors to allow its workers to solicit and substitute a volunteer if the worker's religious belief requires time off without pay for a holy day.

Plaintiffs also move that Plaintiffs' counsel be appointed to represent the certified class, pursuant to Rule 23(g).

Pursuant to N.D.Tex. Local Rule 23.2, this Motion is brought within ninety days of filing suit.

## I. STATEMENT OF FACTS

Mr. Robinson and Mr. Scruggs are both employees at General Motors' Arlington assembly plant. Both Named Plaintiffs are good employees who desire to work for General Motors for the duration of their careers. Both Named Plaintiffs share real religious beliefs that they can neither work nor be paid on holy days. Despite requesting unpaid time off for holy days, GM has denied these requests.

Plaintiffs and Defendants engaged in months of pre-litigation negotiation, exhausted the EEOC administrative process, and conducted a substantive discussion concerning resolution as required by this Court at the Rule 26(f) conference. However, Defendants have refused to grant the Named Plaintiffs unpaid time off work for religious holy days. Further, Defendants have not argued that they are in fact granting such religious accommodation at any of their U.S. facilities. Therefore, Plaintiffs seek class relief in the form of an injunction for all General Motors workers within the United States subject to the 2011 UAW-GM National Agreement and who may seek unpaid leave for a holy day because of a religious belief.

**A.    The Named Plaintiffs and putative class members hold a religious belief that they can neither work nor be paid on certain holy days.**

Mr. Robinson is an active member of the Tyler Sabbath Fellowship ("Tyler Sabbath" or "the Fellowship").  (Robinson Decl., Exh. 1, App. 1 at ¶ 7.)  Tyler Sabbath is a Seventh-Day Sabbatarian congregation located in Whitehouse, Texas.  (Robinson Decl., Exh. 1, App. 1 at ¶ 8.)  Mr. Robinson and Tyler Sabbath observe Sabbath worship services on Saturdays as well as additional holy days throughout the year.  (Robinson Decl., Exh. 1, App. 1 at ¶ 9.)  As a part of Mr. Robinson's sincerely held religious beliefs, Mr. Robinson cannot work on these holy days. (Robinson Decl., Exh. 1, App. 1 at ¶ 10.)  Importantly, as part of Mr. Robinson's religious beliefs, Mr. Robinson is unable to accept pay, including vacation pay, on these holy days. (Robinson Decl., Exh. 1, App. 1 at ¶ 11, Robinson Decl., Exh. 1, App. 5.)   As described in a letter co-signed by his minister:

> In addition to our congregation's weekly Sabbath worship services, which are conducted each Saturday, there are other days each year which our congregation commemorates as holy days.  These holy days will necessarily impact Mr. Robinson's work schedule as detailed below, and he is requesting an adjustment to his work schedule to accommodate his religious belief and practice.
>
> * * *
>
> These holy days are enumerated in the Judeo-Christian scriptures of the 23rd chapter of the book of Leviticus, and are repeated in the 16th chapter of the book of Deuteronomy.  We also believe the new Testament scriptures indicate these holy days were commemorated by Jesus and his disciples, and were continued for decades and beyond by the early New Testament church.
>
> * * *
>
> Please consider this letter as a statement of Mr. Jim Robinson's sincerely held religious belief to abstain from work on these dates in the year 2015. . . .

(Robinson Decl., Exh. 1, App. 5.)

Mr. Scruggs practices Messianic Judaism and is a member of the Beth Yeshua Congregation ("Beth Yeshua" or "the Congregation").  (Scruggs Decl., Exh. 2, App. 7 at ¶ 5.)  Beth Yeshua recognizes certain holy days designated throughout the year.  (Scruggs Decl., Exh. 2, App. 7 at ¶ 6.)  As part of Mr. Scruggs's sincerely held religious belief, he cannot work on these holy days.  (Scruggs Decl., Exh. 2, App. 7 at ¶ 7.)  Importantly, Mr. Scruggs cannot receive pay, including pay from paid time off, on these holy days.  (Scruggs Decl., Exh. 2, App. 7 at ¶ 8.)

By way of example, Ms. Janelle Fox is a putative class member who is similarly situated to the Named Plaintiffs.  Ms. Fox is a driver in the Quality Department of the General Motors' Arlington Assembly Plant.  (Fox Decl., Exh. 3, App. 11 at ¶ 5.)  Ms. Fox identifies as a Messianic Jew and is a member of the Sar Salom and Bat Zion synagogues.  (Fox Decl., Exh. 3, App. 11 at ¶¶ 5 and 6.)  As part of Ms. Fox's sincerely held religious beliefs, she cannot work on holy days, including seven feast days.  (Fox Decl., Exh. 3, App. 11 at ¶ 10.)  Ms. Fox knows of other workers at the General Motors Arlington Assembly Plant besides herself, Mr. Robinson, and Mr. Scruggs, who also have religious beliefs that require them to take time off work for holy days.  (Fox Decl., Exh. 3, App. 12 at ¶ 19.)  Ms. Fox has provided a declaration in support of this motion stating she, like others, desires the Court grant class-wide relief.  (Fox Decl., Exh. 3, App. 12 at ¶¶ 18 and 20.)

The holy days sacred to Messianic Judaism are detailed in Ms. Fox's religious book *Feasts of the Bible*.  (Fox Decl., Exh. 3, App. 14).  These feasts include:  Passover, Unleavened Bread, Firstfruits, Pentecost, Trumpets (Rosh HaShannah), Day of Atonement (Yom Kippur), Tabernacles, Feast of Dedication (Hanukkah), and Feast of Lots (Purim).  (Fox Decl., Exh. 3, App. 14).

**B.** **The Named Plaintiffs and putative class members have sought to take unpaid leave on holy days. General Motors is refusing to grant these requests.**

On or about February 20, 2013, Mr. Robinson submitted his request for accommodation for the holy days in 2013 as he had done in past years. (Robinson Decl., Exh. 1, App. 1 at ¶ 13.) Previously, Mr. Robinson's request had been granted within a month. However, Mr. Robinson never heard anything regarding his February 20, 2013, request. (Robinson Decl., Exh. 1, App. 2 at ¶ 14.) Mr. Robinson called Stacy Atkins, Labor Relations Representative, on or about April 5, 2013, to follow up on his accommodation request. (Robinson Decl., Exh. 1, App. 2 at ¶ 15.) Mr. Atkins instructed Mr. Robinson to contact Brian Kole, Labor Relations Manager. (Robinson Decl., Exh. 1, App. 2 at ¶ 16.) On or about April 8, 2013, Mr. Robinson met with Mr. Kole and asked him about the status of his religious accommodation request. (Robinson Decl., Exh. 1, App. 2 at ¶ 17.) Mr. Kole stated the answer to Mr. Robinson's request was "No." (Robinson Decl., Exh. 1, App. 2 at ¶ 18.) That same day, Mr. Kole sent a confirmation e-mail denying Mr. Robinson's accommodation request to Sergio Benedetti, Technical Supervisor, Brad Smith, Technical Superintendent, and Gerald Conoway, Labor Relations Representative. (Robinson Decl., Exh. 1, App. 2 at ¶ 20, Robinson Decl., Exh. 1, App. 6.) Mr. Robinson received a copy of the e-mail from Mr. Benedetti. (Robinson Decl., Exh. 1, App. 2 at ¶ 21.) On April 16, 2013, Mr. Robinson met with Bill Crone, Personnel Director, regarding his concerns about the denial of his religious accommodation request. (Robinson Decl., Exh. 1, App. 2 at ¶ 23.) Mr. Robinson complained that his accommodation requests were suddenly being denied. (Robinson Decl., Exh. 1, App. 2 at ¶ 24.) Mr. Crone stated he would look into the matter and get back to Mr. Robinson. (Robinson Decl., Exh. 1, App. 2 at ¶ 24.) On Friday, April 19, 2013, Mr. Crone told Mr. Robinson he had reviewed the matter and Mr. Robinson's request would still be denied. (Robinson Decl., Exh. 1, App. 2 at ¶ 25.)

Although at one time General Motors had allowed Mr. Scruggs to take unpaid time off for holy days, General Motors ceased this practice in April 2013.  (Scruggs Decl., Exh. 2, App. 8 at ¶ 20.)  Milton Lopez, Mr. Scruggs' supervisor, instructed Mr. Scruggs to bring his religious preferences form to Mr. Kole.   (Scruggs Decl., Exh. 2, App. 8 at ¶ 21.)   Mr. Kole told Mr. Scruggs that taking off holy days without pay had never been approved and that the only days that had been approved were Sabbath days.   (Scruggs Decl., Exh. 2, App. 8 at ¶ 25.) Mr. Kole told Mr. Scruggs he would have to use vacation time to take off holy days.  (Scruggs Decl., Exh. 2, App. 8 at ¶ 26.)  However, since then, Mr. Scruggs can only observe holy days if he has vacation time available and if there are not too many other employees already taking off on that day.  Furthermore, General Motors requires Mr. Scruggs to receive pay on these days off. (Scruggs Decl., Exh. 2, App. 8 at ¶ 27.)   This restriction does not properly accommodate Mr. Scruggs' belief that he must neither work nor be paid on holy days.  (Scruggs Decl., Exh. 2, App. 8 at ¶ 28.)

General Motors has not only denied Ms. Fox's requests to take time off work on holy days, but it has now gone so far as to punish employees who take time off in recognition of their religious beliefs.  As a Messianic Jew, Ms. Fox celebrates the holy days of Passover, which lasted from April 4-10, 2015.  (Fox Decl., Exh. 3, App. 11 at ¶ 12.)  Ms. Fox properly requested leave, but General Motors denied her request.  (Fox Decl., Exh. 3, App. 11 at ¶ 12.)  Because her sincerely held religious beliefs require her to take off Passover, Ms. Fox nevertheless called in to General Motors and took off Passover.  (Fox Decl., Exh. 3, App. 12 at ¶ 14.)   In response, General Motors disciplined Ms. Fox on April 13, 2015, and gave her a write-up that escalates any future discipline against her.  (Fox Decl., Exh. 3, App. 12 at ¶ 15, App. 21.)    In addition, General Motors docked Ms. Fox a day's pay and withheld her pay for the time she took off.

(Fox Decl., Exh. 3, App. 12 at ¶ 15.)  In the 34 years Ms. Fox has worked at General Motors, this is only the second write-up she has ever received.  (Fox Decl., Exh. 3, App. 12 at ¶ 15.)   General Motors' denial of Ms. Fox's request for time off, and subsequent punishment and docking of pay, violates Title VII of the Civil Rights Act of 1964.

### C.   Volunteer workers are available who could cover the Named Plaintiffs and putative class members' shifts.

There is no shortage of volunteers who would cover shifts.  Indeed, eighteen employees have come forward to provide declarations that they would volunteer to cover the shifts of religious workers whose faith requires unpaid leave.  These workers are:

> Roger G. Mellinger, Gary Roy, Loren Sherman, Michael E. Walsh, Daniel J. Ward, Bill Norris, Kendall E. Reaves, Stacey Erb, Kenneth P. Crispell, Shanna M. Slade, Gerald Younger, William Skinner, Jerry L. Foretich, Scott M. Schoonover, Robert Morgan, Johnny M. Pruitte, Wayne Welch, Kevin Black, and Hugh Kennedy.

(Mellinger Decl., Exh. 4, App. 22, through Kennedy Decl., Exh. 22, App. 40.)

Each has declared, "I would gladly volunteer to cover extra hours to allow workers with religious beliefs to take unpaid time off work for holy days."  (Mellinger Decl., Exh. 4, App. 22 at ¶ 4 through Kennedy Decl., Exh. 22, App. 40  at ¶ 4.)  Each has further declared, "It would not cause me any hardship or undue burden to volunteer to cover shifts."  (Mellinger Decl., Exh. 4, App. 22 at ¶ 5 through Kennedy Decl., Exh. 22, App. 40  at ¶ 5.)

## II. ARGUMENT

This suit should be certified as a class action.  This section is written to conform with the requirements of Local Rule 23.2.

### A.   The appropriate sections of Fed. R. Civ. P. 23 under which the suit is properly maintainable as a class action.

#### 1.   Rule 23(b)(2)

Plaintiffs seek certification under Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

This is a civil rights case seeking only injunctive relief for the class. Class certification is appropriate in civil rights cases seeking injunctive relief, like this one. In *Wal-Mart v. Dukes*, the Supreme Court discussed the standard for establishing the commonality and cohesiveness elements of Rule 23 in the context of employment discrimination cases. 131 S. Ct. 2541 (2011). *Wal-Mart* involved claims for money (back pay and punitive damages) and thus did not fit within the scope of more traditional civil rights cases, like the instant suit, that merely seek injunctive relief. In *Wal-Mart*, a unanimous Supreme Court took great pains to recognize the important role that class actions play in remedying civil rights violations that do not seek class monetary relief.

The unanimous Court concluded: "As we observed in *Amchem*, '[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples' of what [Rule 23](b)(2) is meant to capture." *Wal-Mart*, 131 S.Ct. at 2557-58. The Court did not, therefore, disturb well-established class certification parameters in more traditional civil rights cases. Indeed, the advisory notes to Rule 23 explain that civil rights cases are illustrative of the type of cases appropriately brought under section (b)(2) of the rule: "Illustrative [of cases brought under 23(b)(2)] are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration."

In the instant case, General Motors is refusing to grant unpaid leave to workers whose religion requires no work and no pay on religious holy days.  Plaintiffs' evidence shows this policy is consistently applied at General Motors.  Without even the benefit of discovery, Plaintiffs have identified a putative class member experiencing the exact same refusal of the exact same requested accommodation.  Similarly, without the benefit of formal discovery, eighteen workers have come forward to provide declarations that they would be willing to cover shifts.  Plaintiffs are aware of no instance where General Motors is granting religious leave for holy days.  This is exactly the type of situation where "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Rule 23(b)(2).  Therefore, class action certification is appropriate under Rule 23(b)(2) and should be granted.

### 2.     Rule 23(b)(1)

In the alternative, Plaintiffs seek certification under Rule 23(b)(1).  Rule 23(b)(1) covers situations where relief for the Named Plaintiffs either creates "incompatible standards of conduct for the party opposing the class" or "as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications."  Fed. R. Civ. P. 23(b)(1).

If Mr. Robinson and Mr. Scruggs prevail individually, General Motors faces two options: (1) only grant these two employees unpaid leave, which is incompatible with the standard that all religions should be treated the same; or (2) grant unpaid leave to all religious employees which, as a practical matter, disposes of the interests of those not parties to this action.  This is the exact situation contemplated by Rule 23(b)(1).

Only granting unpaid leave to Mr. Robinson and Mr. Scruggs creates an incompatible standard.  This option would leave General Motors treating members of one religion differently than members of another religion.  This is precisely the sort of disparate treatment that Title VII

prohibits.  That Messianic Jews and Seventh Day Sabbatarians receive the requested leave but not Muslims or Orthodox Jews or others is an incompatible standard.  Besides being prohibited disparate treatment, such special treatment could create resentment or reprisal.

Alternatively, granting the relief to all employees disposes of the interests of those not parties to this action.  All General Motors employees who fall within the class would be accorded the ability to solicit and substitute volunteers so that they may take unpaid leave off work on holy days.

Therefore, class action certification is appropriate under Rule 23(b)(1) and should be granted.

**B.      Specific factual allegations concerning the alleged class.**

**1.      The approximate number of class members.**

According to General Motors' own website, it employs over 212,000 workers.  These employees work at 396 different plants.  (General Motors Website, Exh. 22, App. 41.)  Already, there is one additional employee at the Arlington assembly plant who has come forward, sharing the religious belief that she can neither work nor be paid on certain holy days, and expressing interest in the relief sought in this case.  (Fox Decl., Exh. 3, App. 11-13.)  If there were as few as four employees with these beliefs at each of General Motors's plants, this would amount to 1,584 employees.  However, plaintiffs estimate that the number of employees who have a religious belief that they can neither work nor be paid on holy days is closer to five to ten times this number.  That means there would be between 7,920 and 15,840 putative class members.

**2.      The definition of the class and any subclasses.**

The class is defined as:  All General Motors workers in the United States subject to the 2011 UAW-GM National Agreement who may seek unpaid leave for a holy day because of a

religious belief.  Importantly, the Named Plaintiffs are not asking the Court to construe the 2011 UAW-GM National Agreement.  Indeed, the 2011 UAW-GM National Agreement is entirely silent concerning religious accommodation and holy days.  Rather, the 2011 UAW-GM National Agreement delineates an ideal class of workers who are similar in that (1) they are all factory workers, and (2) they are subject to the same terms and conditions of employment.  The most efficient way to vindicate workers' religious rights among similarly situated workers is to define the class as all General Motors workers United States subject to the 2011 UAW-GM National Agreement who may seek unpaid leave for a holy day because of a religious belief.

No subclasses are sought at this time.

### 3. The distinguishing and common characteristics of class members, such as geography, time, and common financial incentives.

The class members are all General Motors workers subject to the 2011 UAW-GM National Agreement.  The class is confined to those workers working in the United States.  All class members have a religious belief that they can neither work nor be paid on certain holy days.  The class consists of those who now or in the future may seek unpaid time off as required by their faith for a holy day.  The class has a common injury that is susceptible to remedy through simple injunctive relief.

This suit does not seek monetary damages for the class (other than such attorney fees and costs as the Court may award).  Rather than a common financial incentive, the class members collectively seek to be allowed to substitute themselves with a volunteer worker on holy days.  Importantly, the class member would receive time off *without pay*.

### 4. Questions of law and fact that are common to the class.

Because this case is narrowly limited to the specific instance of religious workers seeking unpaid leave for holy days, virtually every material issue of law and fact is common to the class.

Concerning questions of fact, this suit asserts that General Motors refuses to grant unpaid time off for holy days, despite the fact that some religions require these days to be both unworked and unpaid.  The suit asserts that General Motors does not allow a religious worker to solicit and substitute a volunteer worker for the shift at issue.  The legal question raised is whether this practice violates workers' rights to religious accommodation under Title VII of the Civil Rights Act of 1964.

5.     **Allegations concerning the findings required by Rule 23(b)(3).**

Plaintiffs do not seek certification under Rule 23(b)(3).  However, the factors at issue in Rule 23(b)(3) are indicative of why class litigation is particularly suitable for this action.

Prosecuting separate actions individually would create incompatible standards of conduct for General Motors.  This could well create an untenable situation in which some religious adherents are allowed unpaid days off while others are not.  A special accommodation won by individualized plaintiffs could lead to resentment or reprisal by other employees whose desire for religious time off for holy days is not granted.

The real issue here is that General Motors has refused to allow religious workers to substitute a volunteer and take unpaid leave.  This is a practice of general applicability that affects employees of any religion that requires adherents to neither work nor be paid on holy days.  Because it is this one common policy, final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

The central question of law and fact in this case is expected to be whether substituting a volunteer in exchange for unpaid time off work presents an "undue hardship."  Because plaintiffs seek only injunctive relief, class action allows for a resolution of this matter without

necessitating individualized inquiry into issues that might otherwise vary from plaintiff to plaintiff, such as monetary damages.

The class members likely have little interest in individually controlling the prosecution or defense of separate actions because the only relief sought is injunctive, not monetary. It is unlikely that similarly situated employees would take the time, energy and effort to exhaust their administrative remedies with the EEOC and obtain counsel who can then represent them in an action. This is particularly true where economic damages are lacking, and thus there is no contingency fee to entice an attorney to provide representation.

To Plaintiffs' knowledge, there is no litigation concerning the controversy already begun by or against the class members. The action at hand is unique.

Finally, there is a high desirability of concentrating the litigation of the claims in this forum. Resolving this dispute in one forum promotes judicial efficiency. General Motors maintains a substantial presence in this forum because of its Arlington assembly plant. As located within the Fifth Circuit, this forum benefits from settled case law and clear guidance concerning the standard for religious accommodation. Indeed, in *Davis v. Fort Bend County*, the Fifth Circuit specifically addressed the same legal issues present in the instant case. Plaintiffs foresee few difficulties, if any, in managing a class action. *Davis v. Fort Bend County*, 765 F.3d 480 (5th Cir. 2014).

**C.    The basis of the named plaintiffs' claim to be adequate representatives of the class, including financial responsibility to fund the action.**

A class representative must be committed to the litigation and the class and must not have the type of conflict with the class that goes to the heart of the claims. The class representative "need not be the best representative of the class," *Byes v. Telecheck Recovery Serv., Inc.*, 173 F.R.D. 421, 428 (E.D. La. 1997), but he or she must (1) have the interest and ability to represent

the claims of the class vigorously and (2) be free of interests that are antagonistic to the interests of other class members (i.e., conflicts). *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010).

The Named Plaintiffs desire to protect the religious freedoms of themselves as well as others. Mr. Robinson has been pursuing his claims since April 2013, while Mr. Scruggs began his charge in January 2014. Both Plaintiffs are committed to paying the costs—financial and time—of the case.

As stated by Mr. Robinson:

> I want to protect my religious freedoms and I do not want anyone else's religious freedoms to be violated either. I will use my best efforts to represent the interests of people of all faiths who seek to take unpaid time off work for holy days. I have been working with the Law Office of Rob Wiley, P.C. since April 2013 in an attempt to vindicate my religious rights.
>
> * * *
>
> I am committed to this case. I am committed to taking the time necessary to properly represent myself and other employees who seek unpaid time off work for holy days. I am also committed to paying the costs of this case, along with my fellow named Plaintiff, Chris Scruggs. I understand that it may take months or years to have a trial in this matter, followed by months or years of appeals.
>
> * * *
>
> I am committed to zealously continuing to fight for my rights and those of other religious workers who may be affected by this case.

(Robinson Decl. Exh. 1. App. 3 and 4 at ¶¶ 35-40.)

Mr. Scruggs is equally dedicated to this cause:

> It is my right as an American to take unpaid time off work in concurrence with my religious belief. This country was founded on religious principles. I know that it is hard for many employees to have the courage to stand up for their civil and religious rights. Therefore, it is important to me to represent not just my own interests, but those of other workers of faith as well.
>
> * * *

I have been working with the Law Office of Rob Wiley, P.C. since January 2014 in an attempt to vindicate my religious rights as well as the religious rights of others. I am committed to this case. I am committed to taking the time necessary to properly represent myself and other employees who seek unpaid time off work for holy days.

* * *

I will fight to fairly and adequately represent other employees who need to take unpaid time off work because of their religious belief. I am committed to paying the costs of this case, along with my fellow named Plaintiff, James Robinson. I understand that it may take months or years to have a trial in this matter, followed by months or years of appeals.

(Scruggs Decl. Exh. 2. App. 9 and 10 at ¶¶ 38-43.)

Mr. Robinson and Mr. Scruggs are adequate class representatives who will vigorously represent the class. Importantly, their claims are identical to those of the class, and they will benefit equally from the proposed injunction as class members. The interests of the Named Plaintiffs do not presently or potentially conflict with the interests of class members.

**D.     The basis for determining any required jurisdictional amount.**

Because this case arises under Title VII of the Civil Rights Act of 1964, there is no required jurisdictional amount. This Court has subject matter jurisdiction.

**E.     The type and estimated expense of notice to be given to class members, and the source of funds from which notice costs will be paid.**

Plaintiffs contend that this Court should forgo notice or, in the alternative, provide common sense, inexpensive notice.

Importantly, notice is not mandatory for Rule 23(b)(2) or 23(b)(1) classes. Rule 23(c)(1) clarifies that "the court *may* direct appropriate notice to the class." (Emphasis added.) In contrast, only Rule 23(b)(3), which Plaintiffs are *not* using to certify the class, requires

mandatory notice. *See* Fed. R. Civ. P. 23(c)(2). Because Plaintiffs move for certification under Rule 23(b)(2), this Court may provide for no notice or limited notice.

As for appropriate notice, nobody enjoys receiving class action notices in their mailbox. If the Court requires notice, Plaintiffs believe a far more appropriate method of notice would be to: (1) post notice in the break rooms of General Motors' facilities; and/or (2) provide electronic notice via e-mail. Plaintiffs believe the cost of notice should not exceed $5,000 and will be paid by the Named Plaintiffs.

**F.     The discovery necessary for a class certification hearing and the estimated time necessary for such discovery.**

Plaintiffs seek to depose the corporate representative of General Motors concerning the elements of a Title VII religious accommodation claim, any "undue hardship" defense, as well as the class action elements of commonality, adequacy, typicality, and numerosity. Plaintiffs also seek to depose the managers and human resources professionals who denied unpaid religious accommodation leave to Plaintiffs and others. Plaintiffs also seek basic interrogatories and requests for production.

Because class certification is to be resolved expeditiously, Plaintiffs estimate discovery can be completed in nine months.

**G.     All arrangements for payment of Plaintiffs' attorney's fees.**

The Law Office of Rob Wiley, P.C. has agreed to represent the Named Plaintiffs on a contingency fee basis, whereby Plaintiff's attorneys will only receive attorney's fees, if any, as determined by this Court. Plaintiffs have also agreed to bear the costs associated with this case.

### III. CONCLUSION

This suit seeks classification under Federal Rule of Civil Procedure 23. Class action certification is appropriate under Rule (23)(b)(1) and (23)(b)(2) for the class of workers defined

as General Motors workers within the United States who are subject to the 2011 UAW-GM

National Agreement, and who may seek unpaid leave for a holy day because of a religious belief.

Respectfully submitted,

ROB WILEY, P.C.

By: */s/ Eric P. Dama*
Robert J. Wiley
Texas Bar No. 24013750
*Board Certified Specialist, Texas Board of Legal*
*Specialization, Labor and Employment Law*
Eric P. Dama
Texas Bar No. 24090061

LAW OFFICE OF ROB WILEY, P.C.
1825 Market Center Blvd., Suite 385
Dallas, Texas 75207
Telephone:  (214) 528-6500
Facsimile:  (214) 528-6511
rwiley@robwiley.com
edama@robwiley.com

**ATTORNEYS FOR PLAINTIFFS**


## CERTIFICATE OF CONFERENCE

Plaintiffs' counsel has conferred with counsel for Defendants.  Defendants are opposed to relief requested in this motion.

*/s/ Eric P. Dama*
Eric P. Dama

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served upon the following on June 2, 2015, via the Court's ECF system:

John B. Brown
Gavin S. Martinson
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
8117 Preston Road, Suite 500
Dallas, Texas 75225

*/s/ Eric P. Dama*
Eric P. Dama